UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

NATIONAL GRID COMMUNICATIONS, INC., )
)
    Plaintiff )
)
V. )
TOWN OF LENOX and )
LENOX ZONING BOARD OF APPEALS, )
)
    Defendants )

RECEIPT # _____
AMOUNT $ 60.00
SUMMONS ISSUED 2
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK. M.P.
DATE 6/1/05

## COMPLAINT

### I. PRELIMINARY STATEMENT OF CLAIM

MAGISTRATE JUDGE _____

1. This is an appeal from a decision of the Zoning Board of Appeals of the Town of Lenox, Massachusetts, denying a Special Permit and three of six variances sought by the Plaintiff to construct a 130-foot tall wireless communications monopole at 30 Lee Road in Lenox, Massachusetts. The decision is invalid because it "prohibits or [has] the effect of prohibiting the provision of personal wireless services" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), and because it was not "supported by substantial evidence contained in a written record" as required by 47 U.S.C. § 332(c)(7)(B)(iii). Plaintiff seeks relief in the form of an injunction ordering the issuance of all permits and variances required for the construction of

1

the tower, and such other relief as this Court may deem appropriate.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff is asserting claims arising under the laws of the United States, including 47 U.S.C. § 332(c)(7), added by Section 704 of the Telecommunications Act of 1996 (hereinafter the "1996 Act").

3. Venue is proper in the District of Massachusetts, pursuant to 28 U.S.C. §1391(b), and Local Rule 40.1.

## III. PARTIES

4. The plaintiff, National Grid Communications, Inc., which does business as Gridcom, is a Massachusetts corporation with a usual place of business at 25 Research Drive, Westborough, Massachusetts 01582.

5. Defendant Town of Lenox is a municipality in the State of Massachusetts, which regulates certain aspects of land use within Lenox, Massachusetts by means of a zoning By-Law (hereinafter the "By-Law").

6. Defendant Zoning Board of Appeals of the Town of Lenox is the municipal body responsible for granting special permits and variances in Lenox, Massachusetts.

## IV. STATEMENT OF FACTS

7. Wireless telephones came into widespread use during the early to mid-1980s, and since that time, wireless telephone use has grown significantly. In addition to servicing individual consumers and businesses, wireless communications facilities improve the ability of police, fire, and other rescue personnel to provide emergency services by virtue of enhanced transmission range and immediate on-the-scene reporting.

8. PCS technology operates by transmitting low power radio signals between subscribers' telephones and PCS service providers' antennas mounted on towers, poles, buildings or other structures. The antennas feed the signals through electronic devices located in equipment cabinets near the antennas and then connect the calls to the regular telephone lines. The area covered by each set of antennas is referred to as a "cell".

9. As a vehicle moves out of the coverage range of one cell, the radio signal is "handed off" to the cell site in the adjacent cell. In order for the system to provide reliable PCS telephone service to subscribers, there must be a sufficient number of properly-placed overlapping cell sites. Because the system operates at low power, signal degradation can become a significant technical problem. It is therefore critically important that facilities within each cell be located in strictly prescribed areas.

10. For proper service, there must also be a relatively unobstructed "line of sight" between the antennas and the subscribers' telephones. Each set of antennas must be of sufficient height to clear all intervening topographical features and vegetation.

11. National Grid Communications, Inc. and its predecessor, Tower Ventures II, LLC (a Delaware limited liability company), work with Federally-licensed providers of wireless telephone service in identifying and acquiring appropriate sites for the development of wireless telecommunications facilities, and in constructing such facilities for use by providers of wireless telecommunications services.

12. Prior to April, 2004, Tower Ventures, working with Omnipoint Holdings, Inc., a wholly-owned subsidiary of T-Mobile, USA, Inc., identified an area in the Town of Lenox where there is a substantial lack of coverage for several wireless providers, including Omnipoint. Omnipoint is licensed by the Federal Communications Commission ("FCC") to facilitate the development of a wireless telecommunication network in keeping with the goals of the Telecommunications Act of 1996 and its license with the FCC. Omnipoint is currently developing a wireless communications network designed to provide its service throughout Massachusetts.

13. Working with Omnipoint, Tower Ventures determined that a cell site in the vicinity of 30 Lee Road in Lenox was necessary to provide reliable wireless coverage to portions of the Town of Lenox and nearby areas and thoroughfares.

14. On April 7, 2004, Tower Ventures, with Omnipoint as a co-applicant, applied for a special permit and six variances for the construction of a 130-foot self-supporting monopole tower, with associated equipment, at 30 Lee Road. The location is in a residential (R-1A) zone, and is not within the Town of Lenox's Wireless Telecommunications Overlay District.

15. Hearings commenced on June 16, 2004, and continued on August 18, 2004, September 14, 2004, November 17, 2004, February 2, 2005, March 9, 2005, and April 6, 2005. In October, 2004, National Grid Communications, Inc. acquired substantially all of the assets of Tower Ventures II, LLC, and thereafter informed the Defendants of the transaction.

16. The Defendants retained a consultant to review various technical aspects of the pending application. During the hearing process, the Defendants requested, and Plaintiff agreed to, continuances of the hearings in order to consider or reconsider possible alternate locations for wireless facilities which were suggested by the Defendants, their consultant, or members of the public.

17. During the course of the hearings, Plaintiff presented evidence of Omnipoint's significant gap in radio frequency coverage in the area around 30 Lee Road, and its extensive site selection efforts, including efforts to locate possible alternate sites to fill in the gap. Plaintiff also presented engineering and other evaluations of several sites which had been suggested as possible alternatives.

18. After the close of the hearing on April 6, 2005, the Defendant Board voted to deny the special permit, with two members voting in favor of granting the permit, and three voting against. The Defendant Board also voted on each of the six variance requests, granting three of them, and denying three of them. A true copy of the Defendant Board's written decision, which was filed with the Town Clerk on April 29, 2005, is attached hereto and incorporated herein as Exhibit A.

V.  **STATEMENT OF CLAIMS**

Count I

(1996 Act - Prohibition of Wireless Services)

19. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-18 as if set forth fully herein.

20. 47 U.S.C. § 332(c)(7)(B)(i)(II) provides, inter alia, that the "regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . .

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

21. By their decision, the Defendants have prohibited or had the effect of prohibiting the provision of personal wireless services in those portions of Lenox and surrounding areas where there Omnipoint lacks sufficient radio frequency coverage.

22. The decision violates the 1996 Act and is therefore invalid.

### Count II

#### (1996 Act - Lack of Substantial Evidence)

23. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-22 as if set forth fully herein.

24. 47 U.S.C. § 332(c)(7)(B)(iii) provides, inter alia, that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record".

25. The Zoning Board of Appeals Decision is not supported by substantial evidence contained in a written record. The decision violates the 1996 Act, and is therefore invalid.

**VI. PRAYERS FOR RELIEF**

WHEREFORE, the Plaintiff respectfully demands judgment

7

against the Defendants Town of Lenox and the Lenox Zoning Board of Appeals, in the form of:

1. An injunction and order of mandamus directing the Lenox Zoning Board of Appeals to approve the Plaintiff's application for a special permit and variances and annulling the decision of the Zoning Board of Appeals;

2. An injunction and order of mandamus directing the Zoning Board of Appeals to issue a special permit and all requested variances for the subject site;

3. An injunction and order of mandamus directing the Town of Lenox, through its agents or officers, to issue all other permits and approvals necessary to permit the construction of the proposed facility; and

4. Such other and further relief as may be meet and just.

NATIONAL GRID COMMUNICATIONS, INC.,

By: *[signature]*
Kenneth Ira Spigle
687 Highland Avenue, Suite 1
Needham, Massachusetts 02494
(781) 453-3900
Facsimile: (781) 453-0510

Dated:    May 27, 2005

TOWN OF LENOX
ZONING BOARD OF APPEALS
DECISION

At a Public Hearing on June 16, 2004 which was continued to August 18, 2004, to September 14, 2004, to November 17, 2004, to February 2, 2005, to March 9, 2005 and to April 6, 2005 (Petitioner having waived its right to a decision within 90 days of filing) the Lenox Zoning Board of Appeals (the "Board") heard the Petition of Tower Ventures II, LLC and the Rose Nominee Realty Trust ("Petitioners") for a Special Permit under Section 15.5.8 of the Lenox Zoning Bylaw and for Variances from Lenox Zoning Bylaw Sections 15.5(9)(D)(Clearing Limits), 15.5(9)(I)(Overlay District Setback), 15.5(9)(H)(Height Requirements), 15.5(7)(A)(Use Outside District), 15.5(11)(B)(I)(Use Outside District), 15.5(15)(A)(Town as Named Insured), and 15.5(16)(Term of Special Permit), to permit construction of a new Personal Wireless Service Facility ("the Facility") including a 130-foot tall monopole tower and associated equipment, at property located at 30 Lee Road (Map 3, Parcel 53) in the R-1A zone ("the Property"). Members of the Zoning Board of Appeals hearing the Petition were Harold Brown, Shawn Leary Considine, Jedd Hall, Daniel Mintz, and Clifford Snyder.

The property, currently owned by Petitioner Rose Nominee Realty Trust, is located near Routes 7 & 20 in a residential zone and outside the Wireless Telecommunications Overlay District established under Section 15 of the Lenox Zoning Bylaws. Petitioner Tower Ventures II, LLC, proposed to construct, operate and maintain a cell tower on the property, intending to rent space on the tower to its customer and co-applicant, Omnipoint Holdings, Inc., known as T-Mobile USA.

In an effort to better understand the technical aspects of Petitioners' application, the Zoning Board of Appeals retained an expert in the field, David Maxson, of Broadcast Signal Lab, LLP, of Medfield, Massachusetts, who advised the Board throughout the hearing process.

RECEIVED APR 29 2005 TOWN CLERK


EXHIBIT A

At the hearings before the Zoning Board, Petitioner Tower Ventures II, LLC submitted evidence in an effort to show that a significant gap in T. Mobile's PCS mobile telephone service existed in southern Lenox and along Routes 7 & 20 which would be filled by the proposed facility, and that all reasonable alternatives to the proposed facility had been exhausted by the Petitioner.

Section 15.5.3 of the Zoning Bylaws defines "adequate coverage" for service to be where the median field strength of the transmitted signal is greater than −95 dbm. Petitioner's evidence showing a gap relied primarily on coverage maps for which −84 dbm was the stated standard. −84 dbm is a higher threshold for coverage than −95 dbm. With respect to alternatives to the proposed site, Petitioner presented evidence that five nearby alternatives had been explored (see Tab 7 of Petition), but abutters and others who appeared at the Hearing in opposition to the project suggested additional alternative sites including Trinity Church, Cranwell Resort, Blantyre, Caligari's, the State Police Barracks in Lee, and a privately owned, residential property on Laurel Lake. Petitioner followed up on these properties and reported that a tower atop Trinity Church would complement the proposed tower but not replace it. Mr. Maxson agreed with this judgment. The other suggested alternatives were determined to be unworkable by the Petitioners. Mr. Maxon also submitted an analysis of such alternatives, concluding that a combination of sites including Caligari's, the lakefront property, and the State Police Barracks could present a satisfactory solution to T. Mobile's coverage gap, as could some combination of lower towers at alternate sites.

At the Public Hearing, eight neighbors and abutters, including property owners and representatives of Cranwell and Canyon Ranch, spoke in opposition to the tower based on its location in a residential district, its requirement of numerous variances from the Lenox Zoning Bylaw, and its visibility above the tree line in a rural area. Numerous letters were also read into the record. The Lenox Planning Board Board submitted a recommendation against construction of the facility because of its location outside the Overlay District. The Lenox Conservation Commission noted its view that, if

constructed, the tower should be moved farther from the wetlands that exist on the property.

At its Decision Meeting held on April 6, 2005, Zoning Board of Appeals members initially discussed and voted on the Petitioners' request for a Special Permit to construct the facility under Section 15.5.8 of the Bylaw. Various members expressed concern that the town's Overlay District was outdated; that a town Master Plan was needed to prevent numerous, piecemeal applications for construction of towers; and that Petitioners' coverage maps were based on a standard more stringent than the Bylaw requires. Based on the requirements of federal law, the Zoning Bylaw, and the facts presented, Board members then voted on whether to grant the Special Permit. By a vote of 2 in favor, 3 opposed, the Special Permit was denied. Shawn Leary Considine and Daniel Mintz voted in favor, finding that a substantial gap in service had been demonstrated by the Petitioners and that no reasonable alternatives appeared to exist. The remaining members, however, found that no substantial gap had been shown, in part because the Petitioners had based their coverage maps on a more stringent service standard than the standard of the town Bylaws. The remaining members also determined that the Petitioners had not adequately investigated all reasonable alternatives to the proposed tower, including other sites and a reduction in height of the proposed tower or shorter towers at other sites.

Although conceding that the matter of Variances was probably moot, Board members then discussed voted on each Variance request in order to ensure that the record of the hearing contained sufficient background as to their reasoning. The Variance to permit additional clearing around the tower area was denied by a vote of 4-1, on findings of lack of hardship and detriment to neighborhood. The height Variance to permit construction of a 130-foot tower was denied by a vote of 5-0, on findings that no evidence was presented of coverage at a height conforming to the Bylaw. The Variance from the setback requirement of the Overlay District provisions was granted by a vote of 5-0. The Variance from the requirement that the tower be built within the Overlay District was granted, as members were in agreement that the Overlay District itself was outdated. However, members also noted their opposition to the location of mobile phone

towers in residential districts such as the one targeted by the Petitioners. The Variance that would have named Lenox as an additionally insured party was approved by a vote of 5-0. And the Variance that would have extended the renewal date of the project was denied by a vote of 5-0, with members noting that no such renewals have been granted to other tower ventures and that no hardship was shown to justify such a variance.

Members concluded the meeting with a discussion of their intent—which was not to prevent construction of personal wireless facilities in Lenox, but rather to insure that such facilities truly fill service gaps and that all appropriate, non-residential locations and tower heights are investigated when alternatives to proposed towers are considered.

This Petition was filed on April 30, 2004; advertisements were published in the Advocate on May 13 and May 20, 2004; the Public Hearing was held on June 16, 2004 and continued to August 18, 2004, to September 14, 2004, to November 17, 2004, to February 2, 2005, to March 9, 2005 and to April 6, 2005, and the Decision Meeting was held on April 6, 2005. Any appeal from this decision must be made pursuant to M.G.L. Chapter 40 A, Section 17, as amended, and must be filed within twenty (20) days of the filing of this Decision with the Lenox Town Clerk.

Filed this 29th day of April, 2005, with the Lenox Town Clerk, the Planning Board, the Zoning Board of Appeals, and the Building Inspector.

_____
Shawn Leary Considine
for the Lenox Zoning Board of Appeals